UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL PAUL B.,

                                    Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of the Social Security
Administration,[1]

                                    Defendant.

Case No.:  24-CV-01859-RBM-AHG

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE DECISION**

**[Doc. 13]**

Plaintiff Michael Paul B.[2] (hereinafter "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the denial of his application for Social Security disability benefits. (Doc. 1.)  On May 13, 2025, the parties filed a joint motion for judicial review of the Administrative Law Judge's ("ALJ") partially favorable decision,[3] finding Plaintiff disabled for a closed period from September 21, 2021 to November 14, 2022. (Doc. 13 ("Joint Motion for Judicial Review").)  The Court has considered the parties'

---

[1] Frank Bisignano is now the Commissioner of the Social Security Administration and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court refers to Plaintiff by first name and last initial.

[3] The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's Request for Review.  (AR 1–6.)

1

briefing (Doc. 13) as well as the entire Administrative Record (Doc. 9). For the reasons discussed below, the Court **AFFIRMS** the ALJ's decision.

## I.    BACKGROUND

In June 2022, Plaintiff submitted an application for a period of disability and disability insurance benefits, alleging a disability onset date of September 21, 2021 due to numerous conditions including, as relevant here, right knee anterior cruciate ligament ("ACL") tear and reconstruction. (AR 184–85, 216.[4]) His claim was initially denied in September 2022 and upon reconsideration in early February 2023. (AR 18.) On February 13, 2023, Plaintiff filed a written request for a hearing before an ALJ, which was held by telephone on October 20, 2023. (AR 18.) In a decision dated February 5, 2024, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled from September 21, 2021 through November 14, 2022, but not disabled after November 15, 2022 and denying him benefits thereafter. (AR 18–36.)

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process, *see* 20 C.F.R. § 404.1520(a), and the additional steps required if the ALJ finds a "claimant's disability does not continue through the date of the decision" based on medical improvement. (AR 20 (citing 20 C.F.R. § 1594(a)).)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 21, 2021, the date he became disabled. (AR 21.) At step two, the ALJ found that from September 21, 2021 through November 14, 2022, Plaintiff "had the following severe impairments: right knee ACL tear, status post tibial bone graft repair; tenosynovitis of the left ankle; degenerative joint disease of the left shoulder; and asthma." (AR 22.) The ALJ also found that the medical and other evidence established that Plaintiff's hypertension, penis injury, sleep apnea, chronic hoarseness due to vocal cord polyps, angina, and gastroesophageal disease have no more than a minimal effect on basic

---

[4] "AR" refers to the page numbers on the Administrative Record lodged on December 13, 2024. (Doc. 9.) For other references, the Court cites the CM/ECF electronic pagination.

24-CV-01859-RBM-AHG

work activities and therefore are not severe impairments.  (AR 22.)

At step three, the ALJ found that Plaintiff's combination of impairments did not meet a Listing and specifically discussed Listings 1.17 and 1.18.  (AR 23.)  In particular, the ALJ explained:

> The claimant's right knee and left ankle impairments were analyzed under Listings 1.17 and 1.18. However, these Listings have not been met because there is no medical documentation of a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands 1.17(C) and 1.18(D)(1); or an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (1.17(C) and 1.18(D)(2)); or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (1.17(C) and 1.18(D)(1)(3)).

(AR 23.)

As to Plaintiff's asthma, the ALJ reiterated that this impairment did not meet a Listing and further noted that there was no evidence of any exacerbation or complication requiring hospitalization as required under 3.03(B).  (AR 23.)

Next, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> [F]rom September 21, 2021 through November 14, 2022, the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 2 hours out of an 8-hour workday; sit for 6 hours out of an 8-hour workday; frequently push or pull with the bilateral lower extremities; frequently push or pull with the bilateral upper extremities; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach overhead with the left upper extremity; and avoid concentrated exposure [to] pulmonary irritants and hazards (such as operational control of moving machinery and hazards).

24-CV-01859-RBM-AHG

(AR 23.)

In reaching this decision, the ALJ considered Plaintiff's Function Report, in which he stated that

> he has problems with lifting, standing, reaching, kneeling, squatting, running, stooping, pushing, pulling, and climbing stairs (Ex. 4E/5-6, 10). He stated that he was able to transport his kids to and from school, prepare his own meals daily (30-60 minutes), light chores (taking out trash and watering) (Ex. 4E/6-7). He denied needing help with personal needs. He goes out multiple times a day and gets around by driving or getting a ride to take his children to school and go shopping (Ex. 4E/8-9). While he was recovering from surgery, he was using crutches, a cane and a brace (Ex. 4E/11).

(AR 24.)

The ALJ documented that Plaintiff had sustained a work-related injury in 2017, which necessitated ACL reconstructive repair surgery of the right knee and [a]fter undergoing ACL surgery repair surgery of the right knee on January 4, 2017, his symptoms resolved sufficiently that he was able to resume working.  (AR 24.)  The ALJ then explains he "continued to work through September [2]1, 2021, when he re-injured his right knee by hyperextending the knee."  (AR 24.)  The ALJ then discussed Plaintiff's medical history, treatment, claimed limitations, and daily activities at length.  (AR 24–25.)  Namely, the ALJ noted that Plaintiff underwent his first of two additional ACL reconstruction surgeries on August 23, 2022.  (AR 25.)  The ALJ stated:

> By November 15, 2022, the claimant had recovered sufficiently from the surgery in August 2022 such that he either had no pain or 3/10 pain; that he was 'back to full activity' that included scootering, jacuzzi and walking; and his gait was observed to be independent and normal without the need for a brace (Ex. 6F/425).

(AR 25.)

The ALJ further noted that Plaintiff underwent the second stage of this reconstruction surgery on February 15, 2023, and that "records note the recovery was quick. In fact, two months after the second stage surgery in April 2023, treatment notes

24-CV-01859-RBM-AHG

document the claimant going 'up and down stairs 50 times a day,' with independent gait and no need for a brace or assistive device." (AR 25.)

The ALJ also found that Plaintiff "had a longstanding history of left shoulder pain" but that there was no record of complaints of shoulder pain since September 21, 2021. (AR 26.) The ALJ further recognized that Plaintiff injured his left knee and ankle during a scooter incident in February 2022. (AR 26.) The ALJ noted that Plaintiff was prescribed a brace for the left ankle in August 2022, but when seen again in January 2023, the podiatric surgeon noted "that Plaintiff did not follow-up with the brace or otherwise follow up on treatment of the ankle symptoms and that the claimant reported 'no issues with the ankle' and that it was stable." (AR 26.) At the hearing, Plaintiff "testified that he no longer needs a cane for the left ankle unless he reinjures it again." (AR 26.)

The ALJ also concluded that the environmental restrictions—the limitation regarding work in an environment with no concentrated exposure to pulmonary irritants—considers Plaintiff's asthma based upon his responses in the Asthma Questionnaire. (AR 27.)

Lastly, the ALJ considered and summarized two physicians' opinions, both of whom reviewed Plaintiff's record and opined as to his RFC as follows:

> H. Arora, M.D., reviewed the record on September 28, 2022, and opined that the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours out of an 8-hour workday; sit for 6 hours out of an 8-hour workday; occasionally climb ramps and stairs; occasionally climb ladders, ropes or scaffolds; frequently balance and stoop; occasionally kneel, crouch, and crawl; and avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other pulmonary irritants (Ex. 1A). For the period from September 21, 2021 through November 14, 2022, this opinion is persuasive except that the claimant should be restricted to stand or walk for 2 hours total in an 8-hour workday as well as frequent push or pull with the bilateral lower extremities due to the claimant's right knee hyperextension injury that resulted in a complete rupture of the ACL graft from the ACL surgery in 2017 and posterior horn medial meniscus tear as shown by MRI scan (Ex. 1F/43, 63, 134). The record documents corresponding abnormal clinical signs and

24-CV-01859-RBM-AHG

symptoms as the need for surgery of the right knee in August 2022. It is reasonable that the limitation continued for recovery from the surgery until November 15, 2022, as discussed above. Further, in light of the longstanding history of left shoulder impairment, it is reasonable that he should be limited to frequent push or pull with the left upper extremity and frequent overhead reach with the left upper extremity.

Julie Chu, M.D., reviewed the record on February 2, 2023, and opined that the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours out of an 8-hour workday; sit for 6 hours out of an 8-hour workday; frequently push or pull with the bilateral lower extremities; frequently push or pull with the left upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; frequently reach overhead with the left upper extremity; and avoid concentrated exposure to hazards (Ex. 3A). For the period from September 21, 2021 through November 14, 2022, this opinion is persuasive except that the claimant should be restricted to stand or walk for 2 hours total in an 8-hour workday … due to the claimant's right knee hyperextension injury that resulted in a complete rupture of the ACL graft from the ACL surgery in 2017 and posterior horn medial meniscus tear as shown by MRI scan (Ex. 1F/43, 63, 134). The record documents corresponding abnormal clinical signs and symptoms as the need for surgery of the right knee in August 2022. It is reasonable that the limitation continued for recovery from the surgery until November 15, 2022, as discussed above.

(AR 27–28.)

At step four, based on Plaintiff's RFC and a vocational expert's testimony, the ALJ determined that Plaintiff was unable to perform any past relevant work from September 21, 2021 through November 14, 2022. (AR 28.)

Finally, at step five, the ALJ considered Plaintiff's RFC, age, education, and past work experience and concluded that from September 21, 2021 through November 14, 2022, "there were no jobs that existed in significant numbers in the national economy that the claimant could have performed." (AR 29.) As a result, the ALJ determined that Plaintiff was disabled from September 21, 2021 through November 14, 2022. (AR 29.)

///

6

24-CV-01859-RBM-AHG

Regarding the ALJ's finding that Plaintiff's disability ended on November 14, 2022, the ALJ explained that a medical improvement occurred on November 15, 2022:

> By November 15, 2022, treating records no longer documented complaints of right knee pain, instability, popping or significantly reduced range of motion (Ex. 1F, 6F). As discussed below, the claimant briefly required assistive devices and the use of a knee brace after the second part of a staged ACL revision surgery in February 2023. However, physical therapy progress notes show that the claimant quickly recovered from that surgery with reduction of postoperative pain, progression to independent and normal gait without the need for an assistive device, increased strength and stability such that he could engage in robust activities. Physical exams by treating sources show no significant abnormal clinical findings of the right knee, which correlate with imaging studies.

(AR 30.)

The ALJ found that Plaintiff's RFC increased on November 15, 2022 as follows:

> [B]eginning November 15, 2022, the claimant has had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours out of an 8-hour workday; sit for 6 hours out of an 8-hour workday; frequently push or pull with the bilateral lower extremities; frequently push or pull with the bilateral upper extremities; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach overhead with the left upper extremity; and avoid concentrated exposure [to] pulmonary irritants and hazards (such as operational control of moving machinery and hazards).

(AR 30.)

In reaching this decision, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 30.)  For example, the ALJ noted that Plaintiff had fully recovered from the August 2022 surgery by November 15, 2022 and was "'back to full activity' that included scootering, jacuzzi and walking; and his gait was observed to be independent with

24-CV-01859-RBM-AHG

no gait deviations (Ex. 6F/245)." (AR 31.) Further, the ALJ observed that "[i]n January 2023, he was riding his mountain bike (Ex. 6F/463) and after crashing the bike, he had swelling in the right foot (Ex. 6F/469)." (AR 31.) Moreover, although Plaintiff underwent a second stage reconstructive surgery in February 2023, the ALJ summarized Plaintiff's postoperative medical record, which generally reflected that Plaintiff "did well after the surgery" and that "there were no document[ed] significant residuals from this surgery." (AR 31.)

The Appeals Council denied review on August 14, 2024, explaining that there was "no reason under [Defendant's] rules to review the [ALJ]'s decision." (AR 1.) On October 15, 2024, Plaintiff filed the instant action seeking review by this Court. (Doc. 1.)

## II.    STANDARD OF REVIEW

The Court reviews the ALJ's decision and "may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)); 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). It is "more than a mere scintilla but, less than a preponderance . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks and citation omitted). The Court "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Additionally,

24-CV-01859-RBM-AHG

the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination'") (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

### III.  DISCUSSION

Plaintiff raises three issues in asking the Court to remand this matter to the ALJ. (Doc. 13 at 4.)  First, he asserts that the ALJ materially erred when he failed to consider whether Plaintiff's impairments met or equaled Listing 1.21.  (Doc. 13 at 5–12, 15–18.)  Second, Plaintiff contends that the ALJ's finding that he experienced a medical improvement related to the ability to work on November 15, 2022 is unsupported by substantial evidence.  (Doc. 13 at 18–23, 28–31.)  Third, Plaintiff argues that the ALJ's assessment of his testimony was not supported by clear and convincing reasons.  (Doc. 13 at 31–34, 39–42.)  The Court addresses each of these issues below.

### A.  Failure to Address Listing 1.21

The ALJ's decision does not include a discussion of whether Plaintiff's impairments met or equaled Listing 1.21.  (AR 23 (addressing other Listings).)  Having reviewed the entire record, the Court finds that there no error in not specifically discussing Listing 1.21.

In his decision, the ALJ explained that he found Plaintiff's impairments in isolation or combination "do not meet or medically equal any listing in Appendix 1, Subpart P, Regulations No. 4, including Listings 1.17 and 1.18." (AR 29.)  The ALJ then specifically discussed Listings 1.17 and 1.18.  (AR 29–30.)  According to Plaintiff, this was erroneous because his impairments satisfy Listing 1.21 and "the burden is on the ALJ 'to identify any relevant listing(s) in light of the evidence which a claimant has produced.'" (Doc. 13 at 5–6) (first quoting *Yarborough v. Kijakazi*, No. 22-CV-01888, 2023 WL 2966204, at *4 (D. Colo. Apr. 14, 2023) (internal citations omitted); and then citing *Cunningham v. Astrue*, No. CV 11-144 JC, 2011 WL 5103760, at *3 (C.D. Cal. Oct. 27, 2011) ("Remand is appropriate where an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case")).

24-CV-01859-RBM-AHG

As a threshold matter, the parties dispute whether Listing 1.21 can apply to ACL injuries and reconstruction surgeries. (Doc. 13 at 12–18.) Title 20 of the Code of Federal Regulations, Chapter III, Part 404, Subpart P, Appendix 1 sets forth a listing of impairments (the "Listings"). Section 1.21 provides, in full:

> 1.21 Soft tissue injury or abnormality under continuing surgical management …, documented by A, B, and C:
>     A. Evidence confirms continuing surgical management 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.21. directed toward saving, reconstructing, or replacing the affected part of the body. AND
>     B. The surgical management has been, or is expected to be, ongoing for a continuous period of at least 12 months. AND
>     C. Maximum benefit from therapy 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.21. has not yet been achieved.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.21.

Plaintiff contends that his ACL injury[5] was a soft tissue injury encompassed by this Listing. (Doc. 13 at 5–12.) Defendant argues that because Plaintiff's ACL injury was a ligament tear to his knee, it is to be evaluated under Listings 1.17 and 1.18. (*Id.* at 12–18).

Subsection 1.00(L) of the Listings sets forth what the Social Security Administration considers when evaluating soft tissue injuries under Listing 1.21. "Examples include malformations, third- and fourth-degree burns, crush injuries, craniofacial injuries, avulsive injuries, and amputations with complications of the residual limb(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(L)(1)(c). Here, Plaintiff does not explain how an ACL tear is a soft tissue injury akin to the examples given, such as burns. Defendant argues that Plaintiff's ACL injury falls within the "carveout" provided in subsection 1.00(L), which specifies that abnormalities or injuries of bones in the lower extremities are to be evaluated

---

[5] Unless otherwise noted, all references to Plaintiff's "ACL injury" are to the September 21, 2021 incident wherein Plaintiff reinjured his right knee and tore his ACL for a second time.

24-CV-01859-RBM-AHG

under Listings 1.17, 1.18, or 1.22.  *Id*. § 1.00(L)(1)(d).  According to Defendant, Listing 1.17 explicitly contemplates knee-related reconstructive surgery, such as Plaintiff's, as it encompasses "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint," and the knee is a major weight-bearing joint.  *Id*. § 1.00(H)(2).  Plaintiff replies that the ACL is a ligament, which is a soft tissue and not a bone, and so is covered by Listing 1.21 and not subject to any "carveout."  (Doc. 13 at 15–16.)

First, the Court finds the ALJ did not err in not considering Listing 1.21 in addition to 1.17 and 1.18.  However, even if the Court agreed that Plaintiff's ACL injury is not subject to any carveout and would plausibly qualify for consideration under Listing 1.21, any error by the ALJ in not considering it was harmless because Plaintiff was not under continuing surgical management for a period of more than one year as required by Listing 1.21.  Plaintiff contends that his ACL injury "was under continuing surgical management starting in February or March 2022, when Dr. Ohara discussed and scheduled the revision surgery in what was a planned two-stage surgery, first for bone grafting and second for ACL repair." (Doc. 13 at 11.)  However, according to the Listings, "[s]urgical management includes the surgery(ies) itself, as well as various post- surgical procedures, surgical complications, infections or other medical complications, related illnesses, or related treatments that delay your attainment of maximum benefit from therapy."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(L)(1)(a).  Plaintiff does not meaningful argue that discussing and scheduling surgery amounts to surgical intervention, post-surgical procedure, or other related treatments.

Moreover, the Listings specify that in deciding whether an impairment satisfies Listing 1.21, a claimant must produce "evidence from an acceptable medical source(s) confirming that the surgical management has continued, or is expected to continue, for at least 12 months *from the date of the first surgical intervention*."  20 C.F.R. Pt. 404, Subp. P, App. 1 § 1.00.L.1.b (emphasis added).  Here, Plaintiff's first surgery occurred on August 23, 2022.  (AR 25.)  Plaintiff's second and final surgery occurred only six months later in February 2023.  (*Id.*)  For this reason, the cases Plaintiff relies on are inapposite as they

11

involved claimants whose multiple surgeries spanned more than one year. *See Charles B. v. O'Malley*, No. 3:23-CV-00001, 2024 WL 1152403, at *8 (S.D. W. Va. Feb. 29, 2024), *report and recommendation adopted*, No. CV 3:23-0001, 2024 WL 1149277 (S.D. W. Va. Mar. 15, 2024) (finding error in the ALJ's failure to consider Listing 1.21 where the claimant had three surgeries spanning approximately two years); *see also Nicole R. v. Kijakazi*, No. 22 C 1891, 2023 WL 1970360, at *2 (N.D. Ill. Feb. 13, 2023) (finding that the ALJ was "too dismissive of consideration of Listing 1.21" in a case involving a claimant whose injury had not healed after sixteen months and three surgeries).

Here, the record demonstrates that Plaintiff's surgical management began on the date of his first surgical intervention, August 23, 2022. There is no evidence in the record that Plaintiff was still under "surgical management" beyond August 2023. To that end, Plaintiff's own summary of the evidence ends with a report of him doing "strength exercises 3–4 times daily … and constantly climbing stairs" in May 2023. (Doc. 13 at 10.) Accordingly, because there is no evidence in the record that Plaintiff was under continuing surgical management for more than one year, the Court finds it was not in error for the ALJ to omit a discussion of whether Plaintiff's impairments equaled Listing 1.21.

## B. Medical Improvement

Next, Plaintiff contends that the ALJ erred in determining he experienced a medical improvement on November 15, 2022. An individual receiving social security benefits may have those benefits terminated if there is substantial evidence of medical improvement that makes the individual able to engage in substantial gainful activity. 42 U.S.C. §§ 423(f), 1382c(a)(4); 20 C.F.R. § 416.994(b). A "[m]edical improvement is any decrease in the medical severity" of a claimant's impairment, 20 C.F.R. § 404.1594(b)(1), as "determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." *Id.* § 404.1594(c)(1). The Commissioner bears the burden of establishing that such improvement has taken place. *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983).

24-CV-01859-RBM-AHG

When assessing whether there has been a medical improvement in a closed period case such as this one, the ALJ "should compare the medical evidence used to determine that the claimant was disabled with the medical evidence existing at the time of asserted medical improvement." *Attmore v. Colvin*, 827 F.3d 872, 874 (9th Cir. 2016). And the ALJ must consider this evidence "in the broader context of [Plaintiff's] impairment." *Id.* at 877. Isolated signs of improvement are not sufficient; the evidence must show sustained improvement. *Id.* at 878.

The Court is unpersuaded by Plaintiff's reliance on Listing 1.21 and his prior argument that he was under "continuing surgical management well into 2023" in support of his position that a "medical improvement could not have occurred as of November 15, 2022." (Doc. 13 at 19.) As discussed above, the record does not support a finding that Plaintiff was under continuing surgical management as encompassed by Listing 1.21.

Additionally, contrary to Plaintiff's assertion (Doc. 13 at 19), substantial evidence supports the ALJ's determination that Plaintiff experienced a medical improvement on November 15, 2022. In summarizing the Plaintiff's status as of November 15, 2022, the ALJ explains that he had recovered from the August 2022 surgery, "his gait was observed to be independent and normal without the need for a brace," he "had no pain or 3/10 pain," and "[e]xam showed no[] significant abnormalities." (AR 25 (citing AR 1369–70 (record of Plaintiff's November 15, 2022 visit)).) Then, in finding medical improvement had occurred as of November 15, 2022, the ALJ found:

> By November 15, 2022, treating records no longer documented complaints of right knee pain, instability, popping or significantly reduced range of motion (Ex. 1F, 6F). As discussed below, the claimant briefly required assistive devices and the use of a knee brace after the second part of a staged ACL revision surgery in February 2023. However, physical therapy progress notes show that the claimant quickly recovered from that surgery with reduction of postoperative pain, progression to independent and normal gait without the need for an assistive device, increased strength and stability such that he could engage in robust activities. Physical exams by treating sources show no

24-CV-01859-RBM-AHG

significant abnormal clinical findings of the right knee, which correlate with imaging studies.

(AR 30.)

. . .

Progress notes show that he was doing well after the first staged surgery in August 2022. By November 15, 2022, he had stopped physical therapy and was stable. The record does not document significant clinical signs or symptoms until he underwent the planned second right knee surgery in February 2023. Progress notes from his treating orthopedist and physical therapists show no significant residuals and a very quick recovery. He progressed to independence in his gait without the need for assistive device. He had no complications from surgery. Through physical therapy, he regained stability, strength and mobility such that he was able to do robust activities such as riding an E-bike (he testified that he rides over an hour at a time); doing yardwork; doing strength exercises 3–4 times daily; constantly going up and down stairs. The record supports a finding that by November 15, 2022, the claimant regained the ability to do [sic] stand or walk for 6 hours total in an 8-hour workday.

(AR 34.)

These findings are supported by substantial evidence in the record. The November 15, 2022 medical records reflect that Plaintiff was reporting no knee pain and was no longer wearing a knee brace. (AR 639–40.) In comparison to the prior medical records,[6] there are no records of treatment or any other medical records reflecting that Plaintiff experienced any pain or issues (such as popping or instability) with his right knee between November 15, 2022 and the February 15, 2023 second-stage surgery. And Plaintiff self-reported that he rode an e-bike "off-road" at least by the end of December 2022 or early January 2023. (AR 1407 (reporting on February 10, 2023 that he crashed riding a mountain bike "about 5-6 week(s) ago"); AR 56 (explaining at his hearing that "[i]t's not a mountain bike. It's an e-bike" and that he "went off-road").)

---

[6] For example, on November 8, 2022, Plaintiff reported that his knee "gave way about 2 week(s) ago, swelling afterwards. Mild pain." (AR 1352.)

24-CV-01859-RBM-AHG

In support of his position that no medical improvement occurred, Plaintiff points primarily to medical records evidencing pain or other complaints related to the second-stage surgery. (Doc. 13 at 30.)  He refers to records showing he was non-weight bearing and using crutches following the surgery until March 7, 2023. (*Id.* (citing AR 1430, 1444–45, 1451–52).)  Plaintiff also points out that he continued to have swelling and effusion with decreased mobility through April 2023.  (Doc. 13 at 21 (citing AR 1457, 1460–63, 1468, 1474–76, 1482–83).)  But this evidence does not undermine the ALJ's finding that he nevertheless had a quick recovery from this planned surgery: evidence of a "reduction of postoperative pain, progression to independent and normal gait without the need for an assistive device, increased strength and stability such that he could engage in robust activities." (AR 30.)  On March 7, 2023, although he was still non-weight bearing, Plaintiff reported his "knee feels better" and had no resting pain.  (AR 1451.)  On March 27, 2023, Plaintiff reported "not much" pain in his right knee despite having twisted his knee during a fall about 1.5 weeks prior.  (AR 1457.)  By April 18, 2023, Plaintiff had stopped using, and no longer needed, a brace and denied pain.  (AR 1461–63.)  At an April 27, 2023 postoperative exam, Plaintiff had no instability and only mild pain with exercises.  (AR 1468.)  At physical therapy that same day, Plaintiff reported that "[h]e goes up and down stairs 50x a day." (AR 1474.)  On May 5, 2023, Plaintiff again reported no pain and that "his knee is doing a lot better."  (AR 1482.)  By June 22, 2023, Plaintiff reported that he was doing "monster walks," daily physical exercises, and a "ton of yardwork."  (AR 1509.)  This amounts to substantial evidence supporting the ALJ's decision.

Plaintiff also challenges the ALJ's interpretation of medical records in determining that he had returned back to full activity, including "scootering, jacuzzi and walking," by November 15, 2022.  (Doc. 13 at 21–22 (citing AR 25, 31).)  The November 15, 2022 record contains the following notation:

> Prior Level of Function: no limitations with running and sports participation
> Patient Goal: Learn HEP, Return to prior level of activity without pain and limitations
> Back to full activity - scootering, jacuzzi, walking

24-CV-01859-RBM-AHG

(AR 639.)

According to Plaintiff, returning back to full activity was a listed "Patient Goal" that had not yet been achieved by November 15, 2022. (Doc. 13 at 22.) Plaintiff correctly points out that this same notation is present on the medical records from earlier visits. (AR 643 (November 1, 2022 visit), 646 (October 14, 2022 visit), 649 (October 6, 2022 visit), 652 (September 27, 2022 visit), 655 (August 30, 2022 visit).) And the ALJ twice concludes that "[b]y November 15, 2022, . . . he was 'back to full activity' that included scootering, jacuzzi and walking; . . . ." (AR 25, 31). But Plaintiff's argument relies on the premise that the ALJ interpreted this notation as a recording of progress achieved and not, as Plaintiff urges, a goal of physical therapy. It is at least equally likely that the ALJ interpreted this notation as a patient goal but nevertheless found that Plaintiff had achieved it by November 15, 2022, given that he stopped attending physical therapy thereafter.[7] On the other hand, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Smartt*, 53 F.4th at 494 (first quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008); and then citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see also Ahearn v. Saul*, 988 F.3d 1111, 1116–17 (9th Cir. 2021) ("When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision.") (citation omitted). If as Plaintiff suggests the ALJ misinterpreted this notation, whether the notation is a record of Plaintiff's recovery progress or merely a stated goal is an ambiguity, and the Court must uphold the ALJ's interpretation on this point. For this reason as well, the Court is not persuaded that the ALJ erred in finding a medical improvement.

///

---

[7] The Court also notes that both times the ALJ stated this finding, he also listed additional reasons for concluding that Plaintiff had sufficiently recovered from the August 2022 surgery such as that he had little to no pain and that his gait was observed to be independent and normal with no deviations and no need for a brace. (AR 25, 31.)

24-CV-01859-RBM-AHG

To reiterate, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance . . . . ." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015)). "Overall, the standard of review is highly deferential." *Id.* Here, the medical records evidencing both treatment of and complaints regarding Plaintiff's right knee ACL injury end after November 15, 2022.[8] The relevant records begin again only with his preoperative scheduling appointments in late January 2023 for the February 15, 2023 second-stage surgery. (AR 1401–02.) While there is evidence Plaintiff was still experiencing swelling and effusion from the second surgery as late as June 2023 (AR 1509), these same medical records also demonstrate that Plaintiff quickly achieved an independent gait without using a knee brace or other assistive device and had no issues with various activities such as "monster walks" and "tons of yard work" (AR 1509). Contrary to Plaintiff's contention, this evidence does not suggest that the severity of Plaintiff's impairment—right knee ACL tear—had not substantially decreased back in November 2022. Rather, it supports the ALJ's determination that Plaintiff had a quick recovery from the planned second-stage surgery. When viewing Plaintiff's improvement as of November 15, 2022—minimal to no pain, no instability, and return to activities—in the broader context of his ACL injury, the Court finds no error in the ALJ's determination that this amounted to a decrease in the severity of Plaintiff's impairment. And although Plaintiff experienced temporary limitations while recovering from the second-stage planned surgery in February 2023, his quick and unremarkable recovery supports the ALJ's conclusion that the medical improvement in November 2022 was not isolated but in fact sustained improvement. For these reasons, the Court is not persuaded that the ALJ erred in determining that a medical improvement occurred on November 15, 2022.

---

[8] It is for this reason the Court is not persuaded by Plaintiff's position that the November 15, 2022 improvement date is "totally arbitrary." (Doc. 13 at 34.)

24-CV-01859-RBM-AHG

## C.    ALJ's Evaluation of Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ's assessment of his testimony was not supported by clear and convincing reasons. (Doc. 13 at 31–34.) "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Garrison*, 759 F.3d at 1014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014). "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.* (citing *Lingenfelter*, 504 F.3d at 1036).

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear, and convincing reasons for doing so.'" *Ahearn*, 988 F.3d at 1116 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (collecting cases).

Here, because the ALJ found Plaintiff satisfied the first step, the ALJ proceeded to the second step. (AR 30 (explaining that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.").) In the September 2022 Function Report, Plaintiff represented that he was "immobilized" and restricted from lifting, walking, stair-climbing, squatting, sitting, bending, kneeling, standing, and reaching. (AR 234.) At the October 20, 2023 hearing, Plaintiff testified that he could only stand in place for "about 30 minutes"

24-CV-01859-RBM-AHG

and could only walk for 10 to 15 minutes.  (AR 57, 65.)

The ALJ concluded that "[b]y November 15, 2022, the claimant's allegations of right knee pain and its associated limitations are somewhat supported by the record, but the evidence does not substantiate restrictions more limited than the ability to do less than light work as set forth in the residual functional capacity."  (AR 30.)  The ALJ explained that:

> By November 15, 2022, the claimant had recovered sufficiently from the surgery in August 2022 that he was "back to full activity" that included scootering, jacuzzi and walking; and his gait was observed to be independent with no gait deviations (Ex. 6F/245). In January 2023, he was riding his mountain bike (Ex. 6F/463) and after crashing the bike, he had swelling in the right foot (Ex. 6F/469)

(AR 31.)[9]

The ALJ then summarized Plaintiff's recovery from the second surgery, noting that the record indicates Plaintiff "did well after the surgery (e.g. Ex. 6F/509) and there were no document[ed] significant residuals from this surgery."  (AR 31.)  After summarizing numerous records, the ALJ concluded that Plaintiff's "course of treatment and alleged symptoms explained above support the existence of some limitations as set forth in the residual functional capacity, but do not correlate with greater restrictions as alleged by the

---

[9] The Court reiterates that while Plaintiff challenges the ALJ's interpretation of the record on the issue of whether he was "back to full activity," as well as whether Plaintiff rode a mountain bike or an e-bike "off-road," the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Smartt*, 53 F.4th at 494.  Moreover, "[a]n ALJ's error [is] harmless where the ALJ provide[s] one or more invalid reasons for disbelieving a claimant's testimony, but also provide[s] valid reasons that were supported by the record." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Glendenning v. Kijakazi*, No. 22-35391, 2023 WL 3479564, at *1 (9th Cir. May 16, 2023) ("even assuming the ALJ's reasoning regarding the objective medical evidence was insufficiently specific, any error was harmless, because the ALJ relied on other valid reasons to discredit [the plaintiff's] testimony including . . . the conservative nature of her treatment and her daily activities.").

24-CV-01859-RBM-AHG

claimant." (AR 31.)

The ALJ also considered the objective findings in the record that undermined Plaintiff's claims of "disabling pain and weakness," such as that "he does not exhibit any significant atrophy, loss of strength, or difficulty moving that are indicative of severe and disabling pain. He has a normal gait and does not require any assistive devices to ambulate." (AR 33.)  The ALJ further noted that there was no evidence of weight loss, sleep deprivation, or cognitive deficits due to pain or depression.  (AR 33.)  Moreover, the ALJ noted that Plaintiff's "allegations of significant limitations" are incompatible with his description of his daily activities and the fact that since November 15, 2022, he "has been able to engage in very robust activities such as riding an E-bike (he testified that he rides over an hour at a time); doing yardwork; doing strength exercises 3-4 times daily; constantly going up and down stairs." (AR 33.)  Finally, the ALJ pointed out that "[n]one of the claimant's physicians have opined that he is totally and permanently disabled from any kind of work." (AR 33.)

Although "[t]he ALJ must identify the testimony that was not credible and specify 'what evidence undermines the claimant's complaints,'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)), ALJs are not required "to perform a line-by-line exegesis of the claimant's testimony [or] to draft dissertations when denying benefits," *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt*, 53 F.4th at 499.  "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.*  Here, the ALJ provided clear and convincing reasons to discount Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms: daily activities and engagement in robust activities; course of treatment and recovery; and objective findings.  This is sufficient and therefore the Court finds no error in the ALJ's decision to discount the Plaintiff's testimony in this regard.

24-CV-01859-RBM-AHG

## IV.    CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the ALJ's decision.

**IT IS SO ORDERED.**

Dated:  March 6, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

24-CV-01859-RBM-AHG